**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | |
|---|---|
| MARVIN L. PATTON and | ) |
| LATEEFAH MUHAMMAD, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )   CASE NO.: 3:17-cv-659-WKW-WC |
| | ) |
| TUSKEGEE FEDERAL CREDIT UNION, | ) |
| | ) |
| Defendant. | ) |

# RECOMMENDATION OF THE MAGISTRATE JUDGE

Before the court are the following motions: Defendant's Motion to Dismiss or in the alternative Motion for Summary Judgment (Doc. 6); Plaintiffs' Motion for Leave to Amend the Complaint (Doc. 16); and Plaintiffs' Motion for Leave to Allow Limited Discovery (Doc. 19). The District Judge has referred this matter to the undersigned Magistrate Judge "for further proceedings and determination or recommendation as may be appropriate." Doc. 14. As all motions are fully briefed, they are ripe for disposition or recommendation to the District Judge. For the reasons that follow, the undersigned RECOMMENDS that Defendant's Motion to Dismiss be GRANTED, that Plaintiffs' Motion for Leave to Amend the Complaint be DENIED, that Plaintiffs' Motion for Leave to Allow Limited Discovery be DENIED, and that the Complaint be DISMISSED pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## I.   BACKGROUND

Plaintiffs filed their Complaint (Doc. 1) on September 29, 2017. Although each Plaintiff signed the Complaint, Plaintiff Muhammad is also serving as the attorney for

Plaintiffs. Doc. 1 at 13. Plaintiffs sue Tuskegee Federal Credit Union ("TFCU"), which the Complaint describes as a "private, for-profit corporation in Alabama" operating as a "financial institution," over that entity's alleged foreclosure sale, on September 30, 2015, of real property they owned in Tuskegee, Alabama. Doc. 1 at ¶¶ 2-3, 7. Plaintiffs allege that this "foreclosure sale was unlawful, retaliatory and unjust." *Id.* at ¶ 7. They allege that the sale was unlawful and "invalid" because "Defendant was not the owner or holder of the note and mortgage that secured the debt on the property." *Id.* In support of this belief, they allege "that the Defendant had negotiated, transferred and/or sold its ownership of the said note and mortgage to another company when the invalid foreclosure sale occurred[.]" *Id.*

Plaintiffs assert that this alleged unlawful and invalid foreclosure sale violated their "constitutional rights to their property, to allow the Plaintiffs to have the matter concerning their property addressed by the proper the [sic] owner and holder of the note and mortgage, and denying their constitutional rights to due process under the law." *Id.* They further allege that their constitutional rights were violated when TFCU "denied them the opportunity to apply for a modification plan" due to purported "personal vendettas and political differences." *Id.* Plaintiffs allege a further violation of their constitutional rights due to Defendant's having denied them "proper notice of default and acceleration of the mortgage, and a reasonable opportunity to cure a delinquency under the mortgage." *Id.*

Based upon all of these allegations, Plaintiffs' Complaint presents two causes of action: "Invalid, Void or Voidable Foreclosure" under Alabama law (Count One) and

"Violation of the Due Process Clause of the United States Constitution" (Count Two). Doc. 7 at ¶¶ 8-15.

On October 24, 2017, Defendant filed its Motion to Dismiss or in the alternative Motion for Summary Judgment (Doc. 6) and supporting memorandum (Doc. 7). In pertinent part, Defendant seeks dismissal of the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because, as to Plaintiffs' federal constitutional claims, TFCU is not a "state actor," and therefore cannot be liable for any alleged violation of Plaintiffs' constitutional rights under 42 U.S.C. § 1983, and, as to Plaintiffs' state-law claim, in the absence of any valid federal constitutional claim conferring federal question subject matter jurisdiction on this court, the court should decline to exercise supplemental jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367(c)(3). Doc. 7 at 4-8.

On October 25, 2017, the undersigned entered an Order (Doc. 10) directing Plaintiffs to file a written response to Defendant's Motion to Dismiss. On November 21, 2017, after a brief extension was granted by the court, Plaintiffs filed their Motion for Leave to Amend the Complaint (Doc. 16), in which Plaintiffs seek leave to amend the Complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure in order to "conform [their pleadings] to what the evidence and facts of the case show[.]" Doc. 16 at 3. In particular, Plaintiffs seek to amend their description of Defendant as a "private for-profit corporation" in order to better reflect their position that Defendant is "is a public financial institution with certain private functions within the community it serves[.]" *Id.* at 2-3. Plaintiffs attached their proposed Amended Complaint as an exhibit to their Motion for Leave to Amend. *See* Doc. 16-1.

3

On December 4, 2017, Defendant filed its Response (Doc. 18) to Plaintiffs' Motion for Leave to Amend, in which it argues that leave to amend should be denied as futile because Plaintiffs' proposed Amended Complaint remains subject to dismissal for the reasons articulated in Defendant's Motion to Dismiss.  Doc. 18 at 4-6.  On December 21, 2017, Plaintiffs filed their Reply (Doc. 21) to Defendant's Response.  In addition, Plaintiffs also filed on December 21, 2017, their Motion for Leave to Allow Limited Discovery (Doc. 19), in which they argue that discovery should be permitted "because it will be helpful to their case."  Doc. 20 at 2.  In particular, they argue, *inter alia*, that discovery should be allowed so that Plaintiffs may better respond to Defendant's Motion to Dismiss.  *Id.*  On January 9, 2018, Defendant filed its Response (Doc. 22) in opposition to Plaintiffs' Motion for Leave to Allow Limited Discovery, arguing that Plaintiffs are not entitled to conduct any discovery "until the Plaintiffs have established a basis for subject matter jurisdiction in this Court."  Doc. 22 at 1.  *See also id.* at 3 ("Until such time as a properly pled complaint has been filed to determine the proper scope of discovery, allowing limited discovery on all claims [is] contrary to [the] discovery framework set forth in Rule 26 and unduly multiplies the proceedings to the detriment of TFCU.").

## II.    STANDARDS OF REVIEW

The above-described motions require the court to consider the applicability of two provisions of the Federal Rules in these proceedings: Rule 12(b)(6) and Rule 15.  The undersigned will first describe the standard of review applied to motions seeking relief under those Rules.

4

### A.    Rule 12(b)(6)

"In deciding a Rule 12(b)(6) motion to dismiss, the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, but [l]egal conclusions without adequate factual support are entitled to no assumption of truth." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) (quotations and citations omitted). In order to state a claim upon which relief could be granted, a complaint must satisfy the pleading standard of Rule 8 of the Federal Rules of Civil Procedure.

Rule 8 requires that a plaintiff submit a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  In application, the Rule requires that a plaintiff plead "enough facts to state a claim to relief that is plausible on its face," in that the well-pleaded factual matter in the complaint "nudge[s] [the plaintiff's] claims across the line from conceivable to plausible."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  While "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).  Accordingly, the court may "insist upon some specificity in [the] pleading before allowing" the complaint to survive a motion to dismiss. *Twombly*, 550 U.S. at 558.

To adequately state a claim under Rule 8(a) and survive a motion to dismiss pursuant to Rule 12(b)(6), the complaint must plead sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "Where the well-pleaded facts do not permit the court to infer more

5

than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (citations omitted).  Thus, a pleading is insufficient if it offers only mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action[.]" *Twombly*, 550 U.S. at 555.  *See also Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (a complaint does not suffice under Rule 8(a) "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'").  In other words, in order to survive a motion pursuant to Rule 12(b)(6), "a plaintiff [must] include factual allegations for each essential element of his or her claim."  *GeorgiaCarry.Org., Inc. v. Georgia*, 687 F.3d 1244, 1254 (11th Cir. 2012).

In assessing the sufficiency of the complaint, a reviewing court is to look at the complaint as a whole, considering whether all of the facts alleged raise a claim that is plausible on its face.  *See Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1382 (11th Cir. 2010).  Thus, the court reads the complaint "holistically," taking into account all relevant context.  *El-Saba v. Univ. of S. Ala.*, Civ. No. 15-00087-KD-N, 2015 WL 5849747, at *15 (S.D. Ala. Sept. 22, 2015) (citing *Garayalde-Rios v. Municipality of Carolina*, 747 F.3d 15, 25 (1st Cir. 2014)).  As such, "[d]etermining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.

### B.    Rule 15

Rule 15 permits a plaintiff to amend her complaint as a matter of course within twenty-one days of service of the complaint, or within twenty-one days after service of a responsive pleading or a motion under Rule 12(b), (e), or (f).  Fed. R. Civ. P. 15(a)(1). Where the plaintiff may not amend as a matter of course, the plaintiff must obtain consent of the defendant or leave of court to amend the complaint.  Fed. R. Civ. P. 15(a)(2).  In such cases, "[t]he court should freely give leave when justice so requires."  *Id.*  Courts have long recognized that this standard for allowing amendment under the Rule is "liberal."  *See, e.g., In re Engle Cases*, 767 F.3d 1082, 1108 (11th Cir. 2014).  However, the Rules' mandate for "liberal" allowance is not without readily discernible limits.  *See id.* at 1108-09 ("[A] motion for leave to amend may appropriately be denied (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile.") (quotations omitted).  *See also Coventry First, LLC v. McCarty*, 605 F.3d 865, 870 (11th Cir. 2010) (quoting *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007)) ("A proposed amendment may be denied for futility 'when the complaint as amended would still be properly dismissed.'").

## III.    DISCUSSION

### A.    Defendant's Motion to Dismiss

As noted previously, Defendant moves to dismiss Plaintiffs' federal constitutional due process claim, which is alleged pursuant to 42 U.S.C. § 1983, due to a lack of state

action.  "To state a claim for relief in an action brought under § 1983, [Plaintiffs] must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law.  Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach "'merely private conduct, no matter how discriminatory or wrongful[.]'"  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982)).  Thus, a private, non-governmental entity ordinarily may not be found liable under § 1983.  However, not all ostensibly private conduct is beyond the reach of § 1983.  The Eleventh Circuit employs three tests "in determining whether the actions of a private entity are properly attributed to the state."  *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1277 (11th Cir. 2003).  They are as follows:

> (1) the public function test; (2) the state compulsion test; and (3) the nexus/joint action test. The public function test limits state action to instances where private actors are performing functions traditionally the exclusive prerogative of the state. The state compulsion test limits state action to instances where the government has coerced or at least significantly encouraged the action alleged to violate the Constitution. The nexus/joint action test applies where the state has so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in the enterprise.

*Id.* (quoting *Willis v. Univ. Health Servs., Inc.*, 993 F.2d 837, 840 (11th Cir. 1993)) (internal quotations omitted).

Here, as argued by Defendant, Plaintiffs' Complaint fails to allege any facts that could establish the required element of state action or action under the color of state law. Indeed, the Complaint alleges only that Defendant is "a private, for-profit corporation" that

"is a financial institution and conducts business in that regard in Tuskegee, Macon County, Alabama[.]"  Doc. 1 at ¶¶ 2-3.  Courts have routinely recognized that banks, lending institutions, federal credit unions, or other similar institutions are not state actors, and that the conduct of such institutions is not ordinarily under the color of state law.  *See, e.g., Jones v. CitiMortgage, Inc.*, 666 F. App'x 766, 773 (11th Cir. 2016) (holding that complaint did not "support an inference that CitiMortgage and the Phelan firm were 'state actors' subject to suit under § 1983"); *Jensinger v. Nev. Federal Credit Union*, 24 F.3d 1127, 1132 (9th Cir. 1994) (holding that federal credit union, though organized pursuant to federal law and regulated by the federal government, is not a state actor or otherwise engaged in state action).

In addition, the Complaint is wholly lacking in any plausible allegations of fact tending to show that Defendant may be considered a state actor pursuant to any of the three separate tests by which the Eleventh Circuit evaluates claims that a private actor is acting under the color of state law.  Indeed, the closest Plaintiffs tread to alleging facts that might implicate one of the tests is when they allege

> that the Tuskegee Federal Credit Union, subservient to the powers-that-be in this County, especially to some of the leaders of the democratic machine, took advantage of the [sic] Patton and Muhammad's situation and used it to advance the cause of the powers-that-be in disrupting the lives of Muhammad and her family, much like she has seen occur in past situations with other families and individuals.

Doc. 1 at ¶ 15.  If this is Plaintiffs' effort to allege state action through the "state compulsion" test, it is insufficient.  First, it is unclear whether Plaintiffs are even alleging that the undescribed "powers-that-be" acting through TFCU are themselves actually state

or governmental actors.  Second, if the court charitably presumes that the "powers-that-be" are indeed governmental actors, Plaintiffs' allegations are too vague and conclusory to sustain any claim that Defendant's actions are the product of compulsion by such governmental actors.  There are no allegations in the complaint about any specific action taken by any state actor to effectuate the purported constitutional violations about which Plaintiffs complain.  Rule 8 demands more than Plaintiffs have presented in the Complaint. *See, e.g., Twombly*, 550 U.S. at 558 (quotation omitted) (noting that "a district court must retain the power to insist upon some specificity in pleading" before allowing a case to proceed to discovery).  Accordingly, Defendant's motion to dismiss Plaintiffs' federal claims in their original Complaint is well-taken, and such motion is due to be granted. Furthermore, because Plaintiffs failed to state any claim upon which relief could be granted for a violation of their constitutional rights, this court should decline to exercise supplemental jurisdiction over any state law claims presented in the Complaint pursuant to 28 U.S.C. § 1367(c)(3).  *See Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) (encouraging "district courts to dismiss any remaining state claims when . . . the federal claims have been dismissed prior to trial.").  Accordingly, Defendant's Motion to Dismiss (Doc. 6) is due to be granted.

### B.    Plaintiff's Motion for Leave to Amend the Complaint

Perhaps cognizant of the deficiency of their federal constitutional claim as alleged in their original Complaint, Plaintiffs seek leave to amend the complaint to "correct and/or substitute the language previously used in their original Complaint[.]"  Doc. 16 at 2.  In pertinent part, they assert that the Complaint's description of Defendant as a "private for-

10

profit corporation" should be amended to "conform to what the evidence and facts of the case show[.]" *Id.* at 3. To that end, in their proposed Amended Complaint, Plaintiffs allege that Defendant is "a public, not-for-profit financial institution in Alabama." Doc. 16-1 at ¶ 2. They go on to allege that Defendant "is a multiple common bond—primarily educational entity with over 2,500 members from various locations." *Id.* at ¶ 3. They further allege as follows:

> The Defendant, Tuskegee Federal Credit Union is a public financial institution, chartered under the laws of the State of Alabama and regulated by the National Credit Union Association that finances purchases of real estate for its members, and has its principal place of business in Tuskegee, Macon County, Alabama. Because its field membership type is educational, it is deemed to be state-related.

*Id.* at ¶ 6.

Defendant asserts that leave to amend should be denied because the proposed Amended Complaint "sets forth no viable claims[,]" and, even "if leave were permitted, the proposed amended complaint would be subject to dismissal . . . on the same basis as the original complaint." Doc. 18 at 4. In support, Defendant maintains that, even as alleged in the proposed Amended Complaint, Plaintiffs have failed to allege any facts tending to show state action or that Defendant acted under the color of state law. *Id.* at 4-5. As to the description of Defendant as a "public" entity in Plaintiffs' proposed Amended Complaint, Defendant asserts, firstly, that such characterization is incorrect both legally and factually, *see id.* at 6 n.1, and, secondly, that the proposed Amended Complaint still "names no governmental entity, elected government officer, or employee. Fairly read, it simply

11

alleges personal vendettas and political differences between the TFCU, a private party, and Patton, a private party." *Id.*

Plaintiffs insist that the proposed Amended Complaint "rightfully identifies the Credit Union as a public institution" because it has "state-related functions through its membership and through its community activity." Doc. 21 at 6. However, as set forth above, the only allegations in the proposed Amended Complaint appearing in support of this contention is Plaintiffs' allegation that Defendant's "field membership type is educational," and that, therefore, "it is deemed to be state-related." Doc. 16-1 at ¶ 6. Insofar as the undersigned can tell from a careful review of the proposed Amended Complaint, there are no well-pleaded allegations respecting Defendant's "community activity" that would support Plaintiffs' argument that it is a public, rather than private, entity.

On the record before the court, the undersigned concludes that Plaintiffs' motion for leave to amend is due to be denied as futile because the proposed Amended Complaint is subject to dismissal for failure to state a claim upon which relief could be granted. In short, Plaintiffs' proposed amendment of the description of Defendant as a "public," rather than "private," financial institution is not, alone, sufficient to cure the defect of Plaintiffs' original Complaint, which plainly failed to sufficiently allege state action on the part of Defendant. First, the court is not required to accept as true Plaintiffs' conclusory and self-serving description of Defendant as a "public financial institution." *See, e.g., Iqbal*, 556 U.S. at 678-79 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. . . . While legal conclusions can provide

12

the framework of a complaint, they must be supported by factual allegations.").  Whether Defendant is a state actor or is engaged in action under the color of state law is a legal question that is to be decided based upon the facts pleaded and proven by Plaintiffs.  *See, e.g., Bailey v. McCann*, 550 F.2d 1016, 1018 (5th Cir. 1977) (recognizing that whether a private association may be liable under § 1983 due to the State's entwinement with the association's licensing requirements is a legal question).  Thus, Plaintiffs must support their legal conclusion about Defendant with sufficient well-pleaded factual allegations demonstrating the "public" nature of Defendant's activities or, at least, tending to support a finding that, even as an ostensibly private actor, Defendant may be liable under § 1983 pursuant to one of the three tests discussed previously.

Unfortunately for Plaintiffs, the proposed Amended Complaint fails to provide sufficient factual allegations in support of any viable theory of liability under § 1983.  The only allegation respecting Defendant itself, that "[b]ecause its field membership type is educational, it is deemed to be state-related[,]" Doc. 16-1 at ¶ 6, is the quintessential "legal conclusion couched as a factual allegation."  *Twombly*, 550 U.S. at 555.  And it is an unsupported legal conclusion at that.  No authority is cited for Plaintiffs' apparent proposition that a credit union's "field membership type" may convert an otherwise private organization into a public one or somehow make it "state-related."  Are Plaintiffs arguing that Defendant is a state actor pursuant to the "public function" test because its membership is comprised of educators and education is traditionally a state function (even though numerous educators, including in Tuskegee, are employed by private institutions)?  Plaintiffs have presented no allegation that Defendant—which they allege to be a financial

institution—is actually engaged in education, and they have provided no legal authority in support of their self-serving assertion that Defendant is "state-related" due to the nature of its membership. Likewise, if Plaintiffs are arguing that Defendant's "community activity" somehow makes it a state actor for purposes of § 1983, then the Amended Complaint must present some well-pleaded factual allegations fleshing-out this theory. What "community activity" is Defendant performing that is traditionally the exclusive prerogative of the state? One searches the proposed Amended Complaint in vain for any allegations about such activity.

In addition, Plaintiffs' proposed Amended Complaint fails to provide any well-pleaded factual allegations supporting any other theory of "private" state action. The proposed Amended Complaint repeats Plaintiffs' vague allegations about the "powers-that-be" in Macon County, but does not provide any allegations about who these people are and how they supposedly worked through Defendant to violate Plaintiffs' constitutional rights. The only new allegations in the proposed Amended Complaint arguably bearing on this theory relate to Plaintiffs' own conduct that supposedly excited the ire of the "powers-that-be," and wholly omits any allegations showing any connection between Defendant, the so-called "powers-that-be," and actual state actors:

> Due to various acts of Plaintiff Muhammad, i.e., filing of lawsuits against the Credit Union and other entities with which some of its Board members are affiliated, questioning actions of Credit Union members that favored some members and disfavored others, supporting certain candidates against the political machine, and other acts by her caused employees and affiliates of the Defendant to develop personal vendettas and political differences against the Plaintiffs.

Doc. 16-1 at ¶ 7.  Vague, unsupported allegations of a nebulous conspiracy of this type are insufficient to state a claim, as they do not permit even a plausible inference that some state actor is lurking somewhere behind all of the actions with which Plaintiffs are aggrieved. Plaintiffs' unparticularized hunch, without more, is insufficient to state a claim.

At bottom, where Plaintiffs have not sued any governmental body, agent or employee, in order to state a claim for a violation of their constitutional rights under § 1983, Plaintiffs must allege sufficient well-pleaded facts tending to show that either 1) Defendant performs functions that are traditionally exclusively performed by the state, 2) that the government has "coerced or significantly encouraged" Defendant to take the actions about which Plaintiffs complain, or 3) the government or a state actor has so insinuated itself into Defendant's activities that it must be viewed as a joint participant in Defendant's activities.  *Focus on the Family*, 344 F.3d at 1277.  Even in the proposed Amended Complaint, Plaintiffs have failed to plead facts supporting the applicability of any of these theories of finding a private actor liable under § 1983.  As such, leave to amend the Complaint is due to be denied as futile.

### C.    Plaintiffs' Motion for Leave to Allow Limited Discovery

The final motion before the court is Plaintiffs' Motion for Leave to Allow Limited Discovery (Doc. 19), in which Plaintiffs seek to compel Defendant to provide discovery that Plaintiffs have been seeking since they commenced their state court action to enjoin the foreclosure that is the subject of the instant suit.  Plaintiffs assert that they need discovery "because they are unable to respond adequately" to Defendant's Motion to Dismiss or in the alternative Motion for Summary Judgment, and that "they should be

15

allowed leave to conduct limited discovery because it will be helpful to their case." Doc. 20 at 2. They have attached to their memorandum in support of the motion their "Limited Consolidated Discovery Requests to Defendant Tuskegee Federal Credit Union" (Doc. 20-1), which includes approximately nineteen different requests, in the nature of interrogatories or requests to produce. In addition, Plaintiffs assert that "there are depositions of various persons that are needed and will be helpful to the Plaintiff's case." Doc. 20 at 3.

Defendant opposes Plaintiffs' request, arguing that "leave should be denied until the Plaintiffs have established a basis for subject matter jurisdiction in this Court." Doc. 22 at 1. Because Plaintiffs have not presented a viable § 1983 claim conferring subject matter jurisdiction in this court, Defendant asserts, it should not be made to respond to Plaintiffs' discovery requests in some quixotic quest to discover a basis for this court to exercise such subject matter jurisdiction. Moreover, Defendant argues, eighteen of the nineteen discovery requests appear related to Plaintiffs' state-law wrongful foreclosure claim, rather than the insufficiently pleaded federal claim that fails to confer subject matter jurisdiction on this court. *Id.* at 3. Finally, Defendant asserts that the one discovery request arguably pertaining to Plaintiffs' federal claim is "absurd and objectionable" in its scope.[1] *Id.*

---

[1] Defendant's argument about the impermissible scope of this lone discovery request is well-taken. Plaintiffs request that Defendant "state, if any, the Defendant's relationship to the State of Alabama, or any other governmental entity, whether through an associate, agent, representative, board member, staff person, customer and/or member of the Defendant. If such a relationship exists, please provide a certified copy of the evidence of the relationship." Doc. 20-1 at ¶ 19. The breadth and vagueness of Plaintiffs' request only makes clear that Plaintiffs seek a fishing expedition prior even to stating a viable federal constitutional claim, not that they earnestly seek discovery in support of concrete factual allegations.

Plaintiffs cite to authority for the general propositions that a request for discovery is "properly denied where a significant amount of discovery has already been obtained and further discovery would not be helpful[,]" and that discovery should be permitted where the requested information is relevant and not unduly burdensome to the responding party. Doc. 20 at 3-4.  They argue that these general propositions support allowing them limited discovery at this time because they have not been able to conduct any discovery prior to this point, and because they deem the information they seek relevant.  *Id.*  However, Plaintiffs cite no authority for their argument that they are entitled to discovery in order to better respond to Defendant's motion to dismiss.  Indeed, courts do not ordinarily allow discovery merely to aid a plaintiff faced with defending the sufficiency of her factual pleading.  *See, e.g., Iqbal*, 556 U.S. at 678-79 ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").  The Eleventh Circuit has long recognized that discovery follows, rather than precedes, resolution of a motion like the one filed by Defendants:

> Facial challenges to the legal sufficiency of a claim or defense, such as a motion to dismiss based on failure to state a claim for relief, should, however, be resolved before discovery begins. Such a dispute always presents a purely legal question; there are no issues of fact because the allegations contained in the pleading are presumed to be true. *See Mitchell v. Duval County Sch. Bd.*, 107 F.3d 837, 838 n.1 (11th Cir.1997) (per curiam). Therefore, neither the parties nor the court have any need for discovery before the court rules on the motion. *See Kaylor v. Fields*, 661 F.2d 1177, 1184 (8th Cir.1981) ("Discovery should follow the filing of a well-pleaded complaint. It is not a device to enable a plaintiff to make a case when his complaint has failed to state a claim.").

*Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997) (footnote omitted).  *See also Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1216 (11th Cir. 2007)

(observing, " should the plaintiff request leave to conduct discovery to support its assertion that the case is properly before the court, the court would deny such request.  In such a situation, the court would not reserve ruling on the motion to dismiss in order to allow the plaintiff to look for what the plaintiff should have had—but did not—before coming through the courthouse doors, even though the court would have the inherent power to do so.").

Here, Plaintiffs are tasked with defeating Defendant's argument that their proposed Amended Complaint fails to present sufficient factual allegations to demonstrate state action on the part of Defendant.  Plaintiffs are not entitled to compel Defendant to produce a trove of information that is, at best, only tangentially related to that question so that Plaintiffs may fish through such discovery in hopes of finding information "helpful to their case."  The discovery process, even if "limited" as Plaintiffs purport, can "carry significant costs," including the following:

> time spent searching for and compiling relevant documents; the time, expense, and aggravation of preparing for and attending depositions; the costs of copying and shipping documents; and the attorneys' fees generated in interpreting discovery requests, drafting responses to interrogatories and coordinating responses to production requests, advising the client as to which documents should be disclosed and which ones withheld, and determining whether certain information is privileged.

*Chudasama*, 123 F.3d at 1367.  For that reason, "when faced with a motion to dismiss a claim for relief that significantly enlarges the scope of discovery, the district court should rule on the motion before entering discovery orders, if possible." *Id.* at 1368.  Accordingly, Defendant should not be made to bear the costs triggered by Plaintiffs' discovery requests until such time as Plaintiffs have presented a viable complaint properly invoking this

18

court's subject matter jurisdiction with sufficient well-pleaded factual allegations in support of their claims.  For the reasons stated previously, even as to their proposed Amended Complaint, Plaintiffs have failed to do so at this time.  As such, Plaintiffs' Motion for Leave to Allow Limited Discovery is due to be denied.

## IV.   CONCLUSION

For all of the foregoing reasons, the undersigned Magistrate Judge hereby RECOMMENDS that Defendant's Motion to Dismiss or in the alternative Motion for Summary Judgment (Doc. 6) be GRANTED to the extent it seeks dismissal of the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, that Plaintiffs' Motion for Leave to Amend the Complaint (Doc. 16) be DENIED, and that Plaintiffs' Motion for Leave to Allow Limited Discovery (Doc. 19) be DENIED.  It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **March 30, 2018**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive, or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon

grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); s*ee Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); s*ee also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

DONE this 16th day of March, 2018.


/s/ Wallace Capel, Jr.
CHIEF UNITED STATES MAGISTRATE JUDGE